UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MR. AND MRS. CATLING, individually and as next friends of T.C., a minor, | ) ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) 2:19-cv-00110-DBH |
| YORK SCHOOL DEPARTMENT, | ) ) ) |
| Defendant | ) |

**ORDER ON MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

In this action commenced pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., Plaintiffs challenge the decision of the state hearing officer to deny Plaintiffs financial reimbursement for their minor child's private educational placement and services. (Complaint ¶¶ 1–7, ECF No. 1). The matter is before the Court on Plaintiff's Motion to Supplement the Record. (ECF No. 23.)

Following a review of the proposed evidence and after consideration of the parties' arguments, the Court grants in part and denies in part Plaintiff's motion.

**LEGAL STANDARD**

Following an educational agency's final decision regarding an IDEA complaint, an aggrieved party may file an action in state or federal court seeking relief from the decision. 20 U.S.C. § 1415(i)(2)(A). "District courts considering challenges to administrative IDEA decisions apply an intermediate standard of review," which the First Circuit often calls

"involved oversight," and which falls between the highly deferential clear-error standard and non-deferential de novo standard. *Johnson v. Bos. Pub. Sch.*, 906 F.3d 182, 190–91 (1st Cir. 2018). The district court "shall receive the records of the administrative proceedings," and "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). However, "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so," in order to ensure "that the administrative process is accorded its due weight and that judicial review does not become a trial de novo." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990).

The First Circuit has recognized several situations where it might be appropriate to supplement the record, including for "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984). In exercising its discretion to supplement the record, "a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Id.* at 791. Courts ordinarily refuse to admit supplemental evidence "[w]here parties could have, but purposely chose not to" introduce the evidence at the hearing, *Roland M.*, 910 F.2d at 997, and "an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial." *Burlington*, 736 F.2d at 791.

Following the First Circuit's acknowledgement that relevant events that occur after the administrative hearing might be appropriately considered by a court in certain situations, this District has on occasion allowed parties to supplement the record with relevant after-acquired "progress evidence" as the evidence could be informative on the adequacy of the prior IEPs or eligibility for special services.  *See e.g.*, *Ms. M. v. Falmouth Sch. Dep't*, No. 2:15-CV-16-DBH, 2015 WL 4725204, at *4 (D. Me. Aug. 7, 2015); *Millay v. Sch. Union 92*, No. CIV 7-178-B-W, 2009 WL 2986742, at *1 (D. Me. Sept. 16, 2009); *Mr. I. v. Maine Sch. Admin. Dist. No. 55*, No. CIV. 04-165-P-H, 2004 WL 2397402, at *3 (D. Me. Oct. 27, 2004).  Nevertheless, because "[a]n IEP is a snapshot, not a retrospective," and because the "actions of school systems cannot . . . be judged exclusively in hindsight" courts must focus on what was "objectively reasonable when the snapshot was taken, that is, at the time the IEP was promulgated."  *Roland M.*, 910 F.2d at 992; *see also*, *D.C. v. Lewiston Sch. Dep't*, No. 2:15-CV-279-NT, 2016 WL 3406082, at *3 (D. Me. June 17, 2016) ("the relevance of proffered additional evidence must be evaluated on a case-by-case basis").

## DISCUSSION

Plaintiffs seek to supplement the record with (1) a report from consultants on the special education system in the York schools prepared a year after the administrative hearing, (2) the results of a purported survey of the special education staff in the York schools conducted a year after the administrative hearing, (3) an IEP proposed for the year following the last IEP under consideration at the administrative hearing, (4) Learning Skills Academy progress reports from the school year following the administrative hearing, (5)

an occupational therapy evaluation from more than a year after the administrative hearing, and (6) a neuropsychological evaluation from one year after the administrative hearing.

The relevance of the consultants' study (ECF No. 25-1) and the staff survey (ECF No. 25-2, 25-3, 25-4) is questionable. The study and survey address all the schools in the system, rather than T.C.'s school or educators specifically, and Plaintiff does not point to any information contained in the report or surveys that addresses T.C.'s needs or services. Evidence that does not specifically involve the individual student at the center of the case has generally been disfavored. *See J. v. Portland Pub. Sch.*, No. 2:15-CV-84-DBH, 2015 WL 9581738, at *5 (D. Me. Dec. 30, 2015) (declining to admit evidence concerning other children because "it simply is not clear that the needs of [the students] are comparable or that each was to receive the same level of support and instruction from the same personnel"). Given the time and nature of the study and survey, the Court is not persuaded that the information is probative of the issues in this case.

The probative value of the February 2019–February 2020 IEP, (ECF No. 25-5), and the Learning Skills Academy Progress Reports, (ECF No. 25-6), appears to be limited. The IEP is not at issue in this case because it was offered long after the administrative hearing for a school year not under review and was never implemented because of T.C.'s private placement. The academic progress reports appear to be somewhat cumulative because the parties offered evidence of T.C.'s progress in the previous two school years at the Learning Skills Academy during the administrative hearing.

The more recent IEP and progress reports, however, are potentially relevant to the adequacy of the IEPs under review. The evidence would be admitted only for that narrow

purpose and not to serve as the basis of a hindsight analysis. *See Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999) ("Evidence arising from events occurring during the 1996–1997 and 1997–1998 school years was properly admitted by the district court, but only for the purpose of deciding whether the proposed IEP for the 1996–1997 school year was reasonably calculated to lead to educational benefits"); *C.G. v. Five Town Cmty. Sch. Dist.*, 436 F. Supp. 2d 181, 186 (D. Me. 2006) (admitting progress evidence but noting that "showing that a private school placement is appropriate entails demonstrating that the school provides some element of special-education services in which the public school placement was deficient. The fact that a child continues to thrive and make social and educational progress in a private setting is irrelevant to that question") (internal citation omitted); *Susan N. v. Wilson Sch. Dist., 70* F.3d 751, 762 (3d Cir. 1995) ("after-acquired evidence. . .should be used by courts only in assessing the reasonableness of the district's initial decisions regarding a particular IEP or the provision of special education services at all" and the court should remember that "neither the statute nor reason countenance Monday Morning Quarterbacking in evaluating the appropriateness of a child's placement") (internal quotations and modifications omitted).  Consistent with this District's recognition that "progress evidence" can be considered when assessing the adequacy of an IEP under review, the Court will allow Plaintiff to supplement the record with the February 2019–February 2020 IEP and the Learning Skills Academy progress reports.

As to the neuropsychological evaluation, Dr. Laura Rubin is presumed to be foreclosed from being able to present new information to this Court because she testified

at the administrative hearing. *See Burlington*, 736 F.2d at 791. Plaintiff has not adequately explained why Dr. Rubin's neuropsychological evaluation, if relevant, could not have been generated before the administrative hearing, especially given that Dr. Rubin worked with T.C. for a lengthy period before the hearing.[1] *See Roland M.*, 910 F.2d at 997. Similarly, although the occupational therapist did not testify at the hearing, Plaintiff has not explained why the evaluation could not have been performed before the hearing, and, as Defendant notes, T.C.'s occupational therapy needs were never raised or considered an issue before the hearing. *Ms. M.*, 2015 WL 4725204, at *5–6 (declining to supplement the record with expert testimony that could have been collected before and introduced at the hearing, "depriving the hearing officer of the opportunity to weigh and compare" conflicting expert testimony) (citing *Sebastian M. v. King Philip Reg'l Sch. Dist.,* 685 F.3d 79, 86 (1st Cir. 2012) ("The valuation of expert testimony is precisely the sort of first-instance administrative determination that is entitled to judicial deference by the district court")). Because of the significant time between the period that is the subject of this matter and the time of the new evaluations, and because Plaintiff has failed to provide the required "solid justification" for admitting the new expert evaluations, the record will not be supplemented with the evaluations. *Roland M.*, 910 F.2d at 996.

---

[1] Plaintiff suggests that evaluators might be reluctant to evaluate a student within the same year as another evaluation. The evidence in the record of evaluations that were performed within a year of one another is inconsistent with that argument. Furthermore, in this case, there appears to have been sufficient time to obtain further evaluations between January 2018 (one year after the January 2017 triennial evaluation) and the May 2018 hearing request and the start of the hearing in July 2018. Plaintiff's argument, therefore, without support or further explanation, is insufficient to overcome the presumption that Dr. Rubin is not permitted to supplement her testimony after the hearing, depriving the hearing officer of the benefit of considering the evidence.

## CONCLUSION

Based on the foregoing analysis, I grant Plaintiff's motion to supplement the record (ECF No. 23) as to the February 2019–February 2020 IEP and the Learning Skills Academy progress reports and deny the motion as to the other proposed evidence.

## NOTICE

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 9th day of March, 2020.